UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHELDON L. P.,[1]

                                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

**DECISION AND ORDER**

6:20-cv-6717–JJM

        Plaintiff brings this action pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of the Commissioner of Social Security that he was not disabled.  Before the court are the parties' cross-motions for judgment on the pleadings [14, 15].[2]  The parties have consented to my jurisdiction [18].  Having reviewed their submissions [14, 15, 16], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 790-page administrative record [12] is presumed. On February 23, 2017, plaintiff filed an application for Supplemental Security Income ("SSI"). Administrative Record [12], pp. 158-164.[3]  Plaintiff's claim was initially denied. Id., pp. 80-82.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination (upper right corner of the page).

[3]     Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

At plaintiff's request, a hearing was held on June 11, 2019 before Administrative Law Judge ("ALJ") John Costello. Id., pp. 16, 40-67. Plaintiff was represented by an attorney. Id., p. 40. ALJ Costello thereafter issued a Notice of Decision denying plaintiff's claim. Id., pp. 13-31. In his decision, ALJ Costello found that plaintiff had the following severe impairments: alcohol and cannabis abuse; depression; bipolar disorder with psychotic features; posttraumatic stress disorder ("PTSD"); and schizoaffective disorder. Id., p. 18. He further found that plaintiff had "moderate limitations" with respect to "interacting with others" and "[his] ability to concentrate, persist, or maintain pace", and that he had "mild limitations" in "understanding, remembering, or applying information" and "the ability to adapt or mange himself." Id., p. 19.

Nonetheless, ALJ Costello determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work, subject to some nonexertional limitations. Specifically, he limited plaintiff to simple, routine tasks, involving only occasional interaction with coworkers and supervisors, and no interaction with the general public. Id., p. 20. In reaching this determination, ALJ Costello gave "significant weight" to the opinion of consultative examiner Christine Ransom, Ph.D., who examined plaintiff in April 2017 and found that he had "intact" attention and concentration and "no evidence of limitation". Id., p. 23-24, 319. ALJ Costello also gave "partial weight" to the assessment by the state agency psychological consultant, L. Hoffman, Ph.D., who performed a non-examination records review, and found plaintiff to have moderate limitations in concentration, persisting, or maintaining pace; mild limitations in interacting with others, adapting and managing himself; and no other restrictions. Id., pp. 24, 73.

ALJ Costello gave "limited weight" to the opinions of Wataru Okada, a licensed master social worker ("LMSW"), who provided therapeutic counseling to plaintiff on several

occasions from June 2017 to April 2019. Id., pp. 25, 414-37, 452-63, 471-87, 495-98, 506-18, 526-30, 554-73. Mr. Okada completed a series of "Monroe County Department of Human Services Psychological Assessment[s] for Determination of Employability" forms, dating from July 2017 to February 2019. Id., pp. 24, 704-14. On those forms, Mr. Okada checked the boxes indicating that plaintiff was, among other things, "very limited" in his ability to maintain attention and concentration for rote tasks and "moderately" or "very limited" in regularly attending to a routine and maintaining a schedule. Id., pp. 24, 704-14. ALJ Costello found that these opinions were temporally limited in scope to six-month periods, were rendered in an administrative context with different standards and procedures than the Social Security Administration, were not adequately supported with explanations, and were inconsistent with the substantial evidence of the record including Mr. Okada's own progress records showing improvement and adequate functioning with treatments. Id., pp. 24-25.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied. Id., pp. 1-6. In its denial notice, the Appeals Council noted plaintiff's submission of an additional mental RFC questionnaire from Mr. Okada dated August 15, 2019, but found that such evidence "d[id] not show a reasonable probability that it would change the outcome of the decision." Id., p. 2. The ALJ's decision thereupon became the final decision of the Commissioner. Id., p. 1.

**ANALYSIS**

Plaintiff argues that: (1) the ALJ erred by rejecting Mr. Okada's opinions indicating that plaintiff had significant limitations; (2) the ALJ's ultimate RFC determination was not supported by substantial evidence; and (3) the Appeals Council erred by finding that a

later-submitted report by Mr. Okada did not show a reasonable probability of changing the outcome. Plaintiff's Memorandum of Law ("MOL") [14-1] at 2, 11-28.

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B. Did the ALJ Err by Rejecting Mr. Okada's Opinions?

Under the regulations applicable to plaintiff's claim,[4] social workers are not "acceptable medical sources" who may render medical opinions but are "other sources". 20 C.F.R. §416.913(d); *see* Martino v. Commissioner of Social Security, 339 F. Supp. 3d 118, 128 (W.D.N.Y. 2018). An ALJ "should consider information from 'other sources,' such as social

---

[4] "[T]he regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017". Michelle K. v. Commissioner of Social Security, 2021 WL 1044262, *3 (W.D.N.Y.). Plaintiff's claim was filed before March 27, 2017. Administrative Record [12], pp. 158-164. Citations to the regulations in this decision are intended to reference the regulations as they were prior to the March 2017 amendments.

workers"; however, "[the ALJ] is free to decide that the opinions of other sources are entitled to no weight or little weight". Id. Moreover, "the ALJ is free to discount [an 'other source' opinion] in favor of the objective findings of other medical doctors." Drennen v. Astrue, 2012 WL 42496, *2 (W.D.N.Y.).

Regarding opinions from other medical sources, "the ALJ must consider the following six factors: 'the length and frequency of the treating relationship; the nature and extent of the relationship; the amount of evidence the source presents to support his or her opinion; the consistency of the opinion with the record; the source's area of specialization; and any other factors the claimant brings to the ALJ.'" Tolliver v. Astrue, 2013 WL 100087, *3 (W.D.N.Y.). However, a "slavish recitation of each and every factor" is not required "where the ALJ's reasoning and adherence to the regulation are clear". Atwater v. Astrue, 512 Fed. App'x 67, 70 (2d Cir. 2013) (Summary Order).

Here, Mr. Okada opined that plaintiff was "very limited" in his ability to maintain attention and concentration for rote tasks and "moderately" or "very limited" in regularly attending to a routine and maintaining a schedule. Id., pp. 24, 704-14. However, the ALJ - in addition to his concerns about the context, scope, and form of Mr. Okada's opinions - found that those opinions were inconsistent with the weight of the evidence and Okada's own progress notes. [12], pp. 24-15. I find that there is substantial support in plaintiff's treatment history, meticulously recounted by the ALJ, for this conclusion.

In January 2017, prior to Mr. Okada's involvement, an examination showed that, while plaintiff had inappropriate affect and some slowed speech and thought process, he was cooperative and had normal thoughts, no delusions, normal memory, and normal cognition. Id., p. 246. By February 2017, plaintiff reported that his psychiatric medications were working

effectively, he was sleeping better, and he felt euthymic throughout the day. Id., p. 264. He was briefly hospitalized in March 2017 with psychotic symptoms, but that appears to have been at least partially brought about by non-compliance with medication. Id., p. 339, 322-60. His medication was adjusted, and treatment notes from April 2017 and thereafter continued to show plaintiff had coherent thoughts, full orientation, normal memory, fair-to-good attention and concentration, average knowledge, coherent thoughts, and fair-to-good insight and judgment. Id., pp. 392, 399, 409, 416, 419-20, 424, 428, 447, 454, 458, 462, 473, 477, 485, 491-92, 497, 502-03, 516-17, 533, 541, 571, 585, 733. Plaintiff could pay attention, finish what he started, follow spoken and written instructions, and denied difficulty getting along with others. Id., pp. 196-97.

In August 2017, plaintiff reported to Mr. Okada that medication was helping calm his racing thoughts, that he was doing better with time management and relaxation, and was noted to have fair attention and concentration among otherwise mild findings. Id., pp. 430-32. In October 2017, plaintiff reported that, despite inconsistent medication usage, he was improving and stabilizing. Id., pp. 435, 438-44. In November 2017, Mr. Okada noted plaintiff had euthymic mood, good attention and concentration, and improving insight and judgment. Id., pp. 453-54. From the beginning of 2018 to well into 2019, plaintiff continued to work toward attaining his General Educational Development (GED) certification and participate in a Work Experience Program (WEP), complaining during that time of only relatively minor symptoms despite his inconsistent adherence to therapy appointments and medication. Id., pp. 476, 480, 510-511, 539-45, 569-80.

Certainly, there are observations by Mr. Okada and elsewhere in the record that could support a less optimistic view, but "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). While an

"ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole".  Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013).  Ultimately, an ALJ's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise".  Brault v. Commissioner of Social Security, 683 F.3d 443, 448 (2d Cir. 2012); see also Bonet ex rel. T.B. v. Colvin, 523 Fed. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision").

Finally, I recognize that a person suffering from bipolar disorder may, by definition, experience "better days and worse days," and that "a claimant's stability on some days does not necessarily support the conclusion that he is able to work every day".  Matta, 508 Fed. App'x at 57.  Nevertheless, "substantial evidence in the record supports the ALJ's conclusion that this plaintiff, with the proper treatment, could perform work on a regular and continuing basis".  Id.

C.  Was the ALJ's Decision Supported by Substantial Evidence?

For the reasons outlined above, I find that the ALJ's decision was supported by substantial evidence.  As discussed, where the record otherwise supports such a conclusion, the ALJ may free to discount an "other source" opinion in favor of the objective findings of acceptable medical sources.  See Drennen, 2012 WL 42496, at *2.  Here, the ALJ placed "significant" weight on the opinions of consultative examiner Dr. Ransom, who found no limitations, and "partial weight" on state agency psychological consultant Dr. Hoffman, who

found mild limitations. [12], pp. 23-24.  Notably, these are the only two acceptable medical sources of record.  *See* 20 C.F.R. §416.913(d).

Contrary to plaintiff's arguments, the ALJ did not err in substantially relying on the consultative examiner's opinion where such opinion was otherwise supported by the record. *See, e.g.*, Trepanier v. Commissioner of Social Security, 752 Fed. App'x 75, 78 (2d Cir. 2018) (Summary Order) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); Giddings v. Astrue, 333 Fed. App'x 649, 652 (2d Cir. 2009) (summary order) (holding that the ALJ incorrectly disregarded a consultative opinion where it stood uncontradicted by another physician); Netter v. Astrue, 272 Fed. App'x 54, 55-56 (2d Cir. 2008) (report of a consultative physician may override opinion of even a treating physician when it is supported by substantial evidence); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (an ALJ may resolve contradictions between the consultative examinations findings and the consultative examiner's conclusions); Mongeur v. Heckler, 722 F. 2d 1033, 1039 (2d Cir. 1983) (same).

Moreover, the fact that the ALJ incorporated more restrictions into his RFC than deemed necessary by the consultative examiner is not grounds for remand. In the first instance, "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." Baker v. Berryhill, 2018 WL 1173782, *2 (W.D.N.Y.); *see also* Catalfamo v. Berryhill, 2019 WL 1128838, *2 (W.D.N.Y.) (rejecting argument that ALJ erred by "impos[ing] more restrictions than th[e medical] opinions suggested were necessary"); Glab v. Commissioner of Social Security, 2018 WL 3422062, *3 (W.D.N.Y.) ("[t]he fact that the ALJ's RFC conclusion was more restrictive in some aspects than [a medical] opinion . . . does not establish that the ALJ was relying on his own lay opinion").  Moreover, the

ALJ's incorporation of these additional restrictions seems to reflect the partial and limited weight, respectively, that he placed on the opinions of Dr. Hoffman and Mr. Okada. *See* [12], pp. 24, 73, 704-14.  Therefore, the ALJ did not improperly rely on his own lay opinion in formulating those restrictions. *See* Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, at *9 (W.D.N.Y) (affirming where "each element in the RFC relating to plaintiff's physical limitations correspond[ed] with either plaintiff's subjective complaints or with an expert medical source statement").

### D. Did the Appeals Council Err in its Treatment of Mr. Okada's Statement Dated August 20, 2019?

Finally, plaintiff's submission of a subsequent opinion by Mr. Okada was considered and properly rejected by the Appeals Council on the grounds that it "d[id] not show a reasonable probability that it would change the outcome of the decision." Id., p. 2.  The relevant inquiry is whether the new evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." Rutkowski v. Astrue, 368 Fed. App'x 226, 229 (2d Cir. 2010); *see* Bushey v. Colvin, 552 Fed. App'x 97, 98 (2d Cir. 2014) (new evidence submitted to Appeals Council "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case").  Here, in a form dated August 2019, Mr. Okada opined that, while plaintiff's symptoms were partially stabilized with psychoparmacotherapy and supportive therapy, he suffered from several significant nonexertional limitations. [12], 34-37.  While this form differs somewhat in form and substance from Mr. Okada's previous submissions, there is nothing in it that alters the weight of the evidence or undercuts the ALJ's analysis of the record as a whole.  Indeed, as discussed above, the ALJ had already explicitly discounted Mr. Okada's functional opinions as being contrary to the weight of the evidence.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings [15] is granted, and plaintiff's motion [14] is denied.

**SO ORDERED**.

Dated: September 29, 2021

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge
